UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

TERRELL ELEBY,

                        Plaintiff,

                                                   **Hon. Hugh B. Scott**

                         v.

                                                   02CV636A

                                                     **Report**
                                                       **&**
R.E. SIMMONS, et al.,                           **Recommendation**

                        Defendants.
───────────────────────────────

      This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 6, Jan. 10, 2003). On defendants' initial amended motion for summary judgment (Docket No. 25), the undersigned rendered a Report & Recommendation (Docket No. 32) recommending granting summary judgment to defendants. Chief Judge Richard Arcara rendered an Order (Docket No. 36) adopting that Report & Recommendation in part and referring plaintiff's assault claim (and whether plaintiff exhausted this claim administratively within the prison) back to the undersigned upon defendants' renewed motion for summary judgment. Shortly after this decision, the Court appointed counsel to plaintiff to assist him (in part) with the newly established Circuit standards for exhaustion (see Docket Nos. 38, 39).

      The instant matter before the Court is defendants' second motion for summary judgment (Docket No. 43). Plaintiff filed a response to this motion (Docket Nos. 50-52), and defendants

did not reply. Following an extension of time, the motion was deemed submitted on March 22, 2005 (see Docket No. 49).

## BACKGROUND

Familiarity with the prior Report & Recommendation (Docket No. 32) is presumed. Plaintiff is an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), at the Attica Correctional Facility ("Attica"). (Docket No. 26, Defs.' Statement, ¶¶ 1, 2; see Docket No. 31, Pl.'s Response to Defs.' Statement at 1 (adopting defendants' statement save where objected to expressly).) Plaintiff alleges that correctional officers defendants Simmons, Schuck, Dylag, and Diehl assaulted him, on July 12, 2000 (Docket No. 26, Defs.' Statement ¶ 8), in violation of his Eighth Amendment right to be free from cruel and unusual punishment. He claims that defendants Simmons, Schuck, Diehl, and Dylag, "as a result of this unprovoked attack" (Docket No. 1, Compl. ¶ 7 ("Compl.")), wrote and defendants Dylag and Diehl endorsed a false misbehavior report on that incident (id. ¶ 8) on July 13, 2000 (id. Compl. Ex.), and that defendant Lieutenant Thomas Dixon improperly conducted a Tier III disciplinary hearing regarding that report, thus violating his right to due process. A disciplinary proceeding was held on July 19 through 31, 2000. Plaintiff, however, calls this hearing a "grievance hearing." (Docket No. 50, Pl. Atty. Aff. ¶ 9, Ex. A, Pl. EBT Tr. at 42.) Plaintiff in his deposition testified to a hearing being conducted while he was in the Special Housing Unit (or the "box" as he referred to it in his testimony, id.). At the close of this disciplinary hearing, Dixon found plaintiff guilty of the charges in the misbehavior report and imposed punishment. (Docket No. 26, Defs.' Statement ¶¶ 6, 15; see Docket No. 31, Pl.'s Response at 1.)

He appealed the discipline meted out on August 1, 2000. (Compl. Ex., Appeal Form to Commissioner, Aug. 1, 2000.)

Plaintiff then was transferred to the Special Housing Unit ("SHU"). He alleged that he lost property in the transfer, filing a grievance for the lost property. (Compl. Ex., Attica C.F. Grievance 41009-00, July 20, 2000 ("Lost Property Grievance"); see Docket No. 46, Struebel Decl. ¶ 17, Ex. I (incomplete copy of Grievance)). Plaintiff sought "that my legal transcript/minutes and other property be found and returned to me. [A.S.A.P.] As for the [officers] J. Schuck & Dylag and others, I ask that departmental charges be log[ged] against them." (Compl. Ex., Lost Property Grievance, page 1). An attachment to the Grievance, dated July 16, 2000, lists the personal items that were missing, alleging that he submitted a claim for those items. Plaintiff also states in this attachment that "Prior to me coming to SHU, I was moving to B-20-41 for program, before I was jumped from behind by C.O. Schuck & [Dylag] and assaulted by both, before others joined in." (Id. page 2.) The copy of this Grievance in the Complaint is a two-sided document. The other side of that page reveals the disposition of the Grievance by the Inmate Grievance Resolution Committee ("IGRC"). The IGRC dismissed the lost property claim because plaintiff had to file a claim before the issue was grievable. (Id.; Docket No. 46, Struebel Decl. ¶¶ 19-22.) This disposition did not discuss plaintiff's assault allegation. Plaintiff did not seek review of the Lost Property Grievance. (Docket No. 44, Eagan Decl. ¶ 12; Docket No. 47, Defs. Statement ¶ 10.) Plaintiff could have appealed the dismissal of the Lost Property Grievance to the Inmate Grievance Program Supervisor (Docket No. 46, Struebel Decl. ¶ 25).

3

During his incarceration in Attica, plaintiff filed thirteen grievances prior to the July 2000 incident (Docket No. 46, Struebel Decl. ¶¶ 5-6), including allegations of staff misconduct, harassment, seeking return of property, and a full internal investigation. Plaintiff appealed adverse decisions in many of them to the Superintendent and the Central Office Review Committee (id. ¶ 9). Prior to July 2000, defendants conclude that plaintiff showed through his use of the grievance and review processes that he was familiar with the grievance and review procedures (see id. ¶ 11). Defendants point to the grievance regulations that allow inmates to file grievances for alleged assaults by corrections officers (id. ¶ 23, citing 7 N.Y.C.R.R. § 701.7(a)(5)(I)).

Plaintiff alleges in the Complaint that he exhausted his administrative remedies, arguing that the claim was "dismissed without addressing the staff brutality/assault claim" and attaching his grievances (Compl. at 5, 6). He then claims that "once a grievance is dismissed the matter is final in the Department of Correctional Services NYS prison, DOCS Directive #4040." (Id. at 6.) Defendants counter that the Lost Property Grievance was dismissed pursuant to Directive # 4040 VA5A-3C, 7 N.Y.C.R.R. § 701.7(a)(5)(i)(c), under which the Inmate Grievance Review Committee may dismiss a grievance that "the grievant is seeking a decision or an appeal of a decision otherwise attainable through the established procedures for . . . Inmate Claims . . . ." (Docket No. 46, Struebel Decl. ¶¶ 19-21, Ex. J., Dir. # 4040 V.A.5.a.(3)(c).)

*Initial Motion for Summary Judgment*

Defendants moved for summary judgment (Docket No. 25, Amended Motion) dismissing the Complaint. (Docket No. 27.) As stated above, the first Report & Recommendation recommended granting summary judgment to defendants on all claims. (Docket No. 32.) Chief

Judge Arcara conducted <u>de novo</u> review of that Report & Recommendation and adopted most of its findings. (Docket No. 36.) The Chief Judge, however, declined to adopt the finding granting defendants summary judgment on plaintiff's assault claim, given the United States Court of Appeals for the Second Circuit series of decisions on exhaustion under the Prison Litigation Reform Act. (Docket No. 36, Order at 2-3.)

*Present Motion for Summary Judgment*

Defendants again move for summary judgment (Docket No. 43) arguing that plaintiff has not exhausted the only remaining claim, that for excessive force. Plaintiff only filed a grievance for lost property and defendants contend that this grievance made only a passing reference to the alleged assault and plaintiff never sought review of the denial of this grievance, hence not exhausting his administrative remedies regarding the alleged assault.

Plaintiff argues that, after his grievance was dismissed, he understood that he could not appeal that decision because he thought it was "final" and, given the nature of that grievance, a <u>pro se</u> inmate plaintiff reasonably believed that review did not exist, hence special circumstances exists for plaintiff's departure from the full exhaustion requirement. (Docket No. 50, Pl. Atty. Aff. ¶¶ 10, 12.) Apparently, Plaintiff argues that he reasonably believed that he could not appeal from the Lost Property Grievance or the assault assertion within that Grievance. He contends that, under <u>Hemphill v. New York</u>, 380 F.3d 680 (2d Cir. 2004), he alleged special circumstances to allow him to deviate from the full exhaustion requirement for his grievance procedure based upon his understanding that he could not appeal the dismissal of that grievance. (Docket No. 52, Pl. Memo. at 2; Docket No. 50, Pl. Atty. Aff. ¶¶ 11-13.) Defendants, however, argue that special circumstances do not exist to warrant such a departure. (Docket No. 48, Defs. Memo. at 8-10.)

5

Plaintiff alternatively argues that summary judgment at this early stage in the litigation is drastic given the "modicum of discovery that has been conducted" in this case. (Docket No. 50, Pl. Atty. Aff. ¶ 17.)

**DISCUSSION**

I.      Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)

(emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

II.     Prison Litigation Reform Act and Exhaustion

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), states "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court found that "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Porter v. Nussle, 534 U.S. 516, 524-25 (2002).  The PLRA was enacted to "reduce the quantity and improve the quality of prisoner suits" by giving prison officials the first opportunity to deal with inmate complaints by internal processes.  Id. at 524-25.  The act's "dominant concern [is] to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court" id. at 528, and clarify the contours of the controversy once it is litigated, id. at 525.  The intent here is to restrict inmate litigation where they had, but failed, to use all of their internal administrative remedies before commencing a federal civil rights action.  See Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001); United States v. Al-Marri, 239 F. Supp. 2d 366, 367 (S.D.N.Y. 2002) (citing Porter, supra, 534 U.S. at 524-25); Blissett v. Casey, 969 F. Supp. 118, 128 (N.D.N.Y. 1997) (Congress's general purpose in enacting PLRA was to discourage filing of frivolous suits by inmates), aff'd, 147 F.3d 218 (2d Cir. 1998), cert. denied, 527 U.S. 1034 (1999).

Plaintiff has an obligation under the PLRA to exhaust "such remedies when Congress has specifically mandated that [she] do so." Giano v. Goord, 250 F.3d 146, 150-51 (2d Cir. 2001) ("Giano I"). Other courts have required plaintiffs to follow the proper channels to exhaust. Mendoza v. Goord, No. 00 Civ. 0146, 2002 U.S. Dist. LEXIS 22573, at *8 (S.D.N.Y. Nov. 21, 2002). The PLRA "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, supra, 534 U.S. at 532, rev'g, Nussle v. Willette, 224 F.3d 95 (2d Cir. 2000). The Supreme Court held that allegations of excessive force are included under the PLRA as prison conditions that first require exhausting administrative remedies before an inmate could be allowed to litigate the issue in federal court, rejecting this Circuit's contrary precedent. Porter, supra, 534 U.S. at 532; see Booth v. Churner, 532 U.S. 731 (2001).

III. Second Circuit Law of Exhaustion

Exhaustion under the PLRA, however, is not jurisdictional in this Circuit, Richardson v. Goord, 347 F.3d 431, 434 (2d Cir. 2003); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004). It is an affirmative defense for defendants to assert, Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999); Ziemba, supra, 366 F.3d at 163, subject to certain defenses such as estoppel, Ziemba, supra, 366 F.3d at 163; Hemphill, supra, 380 F.3d 680 (defendants' threats estopped non-exhaustion defense), and waiver, Johnson v. Testman, 380 F.3d 691 (2d Cir. 2004). Nevertheless, an inmate plaintiff has to exhaust his administrative remedies before commencing a § 1983 action. Richardson, supra, 347 F.3d at 434.

The Second Circuit recently decided a series of appeals which ruled, in part, on the issue of whether the provision of the PLRA that "***such administrative remedies as are available*** are

8

exhausted," 42 U.S.C. § 1997e(a) (emphasis added), allows inmate plaintiffs to use alternative means to exhaust their administrative remedies from the three-tier grievance and appeal process now available from the DOCS, see Giano II, supra, 380 F.3d 670 (special circumstances establish plaintiff's exhaustion); Hemphill, supra, 380 F.3d 680; Johnson, supra, 380 F.3d 691 (defendants waived PLRA exhaustion defense); Abney v. McGinnis, 380 F.3d 663 (2d Cir. 2004) (defendants' behavior sometime renders administrative remedies unavailable for exhaustion purposes, such as plaintiff prevailing in the grievance process but defendants not implementing the grant of the relief); Ortiz v. McBride, 380 F.3d 649 (2d Cir. 2004) ("Ortiz II") (total exhaustion not required for mix of exhausted and unexhausted claims).

Although not expressly part of the Second Circuit's three-step inquiry, these cases established an initial inquiry that the Court must make before starting the three-step process, that is asking whether plaintiff "plausibly seeks to counter defendants' contention that the prisoner failed to exhaust available administrative remedies," Hemphill, supra, 380 F.3d at 686. If plaintiff's counter is plausible, this Court then is required to conduct the three-part inquiry with respect to plaintiff's exhaustion of his claims. Id., 380 F.3d 680. First, the Court must ask whether administrative remedies existed, and if so whether defendants' actions rendered those remedies unavailable to plaintiff. Abney, supra, 380 F.3d 663. Second, the Court must consider whether defendants forfeited the affirmative defense of non-exhaustion either by waiving it or by interfering with plaintiff's efforts to exhaust. Johnson, supra, 380 F.3d 691; Ziemba, supra, 366 F.3d 161. Third, if the Court finds that administrative remedies were available to plaintiff and that defendants have not forfeited the non-exhaustion defense, then the Court must ask whether there exist "special circumstances" which justify plaintiff's failure to exhaust. Giano v.

Goord, 380 F.3d 670 (2d Cir. 2004) ("Giano II"); Rodriguez v. Westchester County Jail, 372 F.3d 485 (2d Cir. 2004); Berry v. Kerik, 366 F.3d 85 (2d Cir. 2003). (See Docket No. 48, Defs. Memo. at 3-4.)

The Second Circuit did not set forth what instances qualify as "special circumstances" but stated that courts must determine whether such circumstances exist "by looking at the circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." Giano II, supra, 380 F.3d at 678. The Circuit Court considered whether "special circumstances" existed in these cases and found they exist upon an inmate's reasonable (if erroneous) interpretation of DOCS regulations, Giano II, supra, 380 F.3d at 689-91; see Hemphill, supra, 380 F.3d at 689-91 (remanded on question whether regulations were clear as to effect of writing directly to superintendent and whether threat of one defendant constitutes a special circumstance). The Second Circuit also recognized an inmate's reliance upon the court's earlier construction of the law (even if later found to be erroneous) was a justifying "special circumstances." See Rodriguez, supra, 372 F.3d at 487 (order denying rehearing, inmate's belief that exhaustion was not required, also held by a panel of the Second Circuit until rejected by the Supreme Court, was justification for not pursuing available remedies), cited in Giano II, supra, 380 F.3d at 675; cf. Berry, supra, 366 F.3d at 87-88 (in absence of justification for not following administrative remedies, dismissal of inmate's action appropriate).

Following these decisions, this Court here denied without prejudice a renewed motion by defendants for summary judgment, to allow them to file a new motion taking these cases into account (Docket No. 36, at 3). At issue here is the third part of the Second Circuit's test, whether

"special circumstances" exist to justify plaintiff's failure to exhaust. The first two tests are not in dispute; plaintiff had an administrative remedy available to him and availed himself of it. Defendants repeatedly raised the issue of exhaustion and hence have not waived it. Plaintiff initially alleged as an alternative argument that he tried to file a grievance arising from the assault but the form was lost or stolen (Docket No. 31, Pl. Response at 1-2; see Docket No. 32, 1st Report & Recommendation at 5), but he does not now allege that defendants have so inhibited his access to the grievance process to estop them from raising the exhaustion defense here. See Hemphill, supra, 380 F.3d at 686; cf. Ziemba, supra, 366 F.3d at 163 (defendants' threats to plaintiff rendered administrative remedies unavailable). Plaintiff also raised the assault at his disciplinary hearing. He also contended that he wrote letters to the Deputy Superintendent for Security at the Attica Correctional Facility and to the DOCS Inspector General, complaining about his treatment at that facility. (Docket No. 30, Pl. Memo. at 2, Ex. A, B.) He now does not raise the missing grievance form, cf. Veloz v. State of N.Y., 339 F. Supp. 2d 505, 514, 516 (S.D.N.Y. 2004) (mere allegation of misplaced or destroyed grievance forms insufficient to show inmate's reasonable attempts to exhaust his remedies), or this letter writing campaign as an alternative means for exhausting his remedies or as "special circumstances" to excuse his non-compliance with the grievance process, cf. Degrafinreid v. Ricks, No. 03 Civ. 6645, 2004 U.S. Dist. LEXIS 24448, at *42 (S.D.N.Y. Dec. 13, 2004) (no special circumstances where inmate engaged in letter writing because he was led to believe that grievance was unavailable).

Analysis of the third test requires a brief review of the DOCS grievance procedure.

IV.     DOCS Grievance Procedure

The Attica Correctional Facility, like similar facilities in New York, has a three-tier grievance procedure that includes filing a grievance with the facility's Inmate Grievance Resolution Committee ("IGRC"); then an appeal to the superintendent; then an appeal to the Central Office Review Committee ("CORC"). N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7; see Harris v. Totten, 244 F. Supp.2d 229, 233 (S.D.N.Y. 2003). The first step has the inmate filing an Inmate Grievance Complaint Form with the facility's Grievance Clerk. 7 N.Y.C.R.R. § 701.7(a)(1), within fourteen days of the incident, N.Y. Corr. Law § 139; see Docket No. 26 Defs.' Statement ¶ 11. The facility's IGRC then reviews the grievance and attempts to resolve it informally and, if resolved to the satisfaction of the grievant inmate, the resolution shall be entered on the grievance. Id. § 701.7(a)(3). If the inmate is not satisfied with the result, the second step is appeal to the facility's superintendent from the written response to the grievance by the IGRC. Id. § 701.7(b)(1). The third step is an appeal of the superintendent's written decision to the CORC. Id. § 701.7(c)(1).

An inmate complaining about lost personal property first had to file a claim through the Inmate Claims process. (Docket No. 46, Struebel Decl. ¶ 21.) If (as plaintiff did here) the inmate files first with the IGRC, the Committee would dismiss the claim and any appeal from that dismissal would be lodged with the Inmate Grievance Program Supervisor (id. ¶¶ 22, 25, Ex. J; 7 N.Y.C.R.R. § 701.7(a)(5)(iv)). An inmate may complain about an assault in a grievance. (Id. ¶23, Ex. J; 7 N.Y.C.R.R. § 701.7(a)(5)(I).)

V.      Defendants' Present Motion

Defendants now contend that, under the Second Circuit's recently enunciated standards, plaintiff did not administratively exhaust his assault/excessive force claim. At most, plaintiff made a fleeting reference to the assault in an unrelated Lost Property Grievance and that he did not even seek review of that grievance. (Docket No. 48, Defs. Memo. at 2-3, 5-6.) Plaintiff now argues that his erroneous belief that he was barred from appealing that Lost Property Grievance was a "special circumstance" to warrant departure from the full exhaustion requirement.

Plaintiff argues that, after his "grievance" was dismissed, he understood that he could not appeal that decision because he thought it was "final" and, given the nature of that grievance, a pro se inmate plaintiff could reasonably believe that review did not exist, hence special circumstances existed for plaintiff's departure from the full exhaustion requirement (Docket No. 50, Pl. Atty. Aff. ¶¶ 10, 12.)

Defendants retort that plaintiff was familiar with the full inmate grievance process from his previous extensive use of that process, including appeals, and he cannot now reasonably argue that he was not aware of that process when he did not appeal the Lost Property Grievance. (Docket No. 48, Defs. Memo. at 9-10.) Plaintiff counters that he believed that he could not appeal that grievance and therefore special circumstances exist.

Plaintiff, however, now confuses two procedures, the disciplinary proceeding and the grievance. Plaintiff's disciplinary proceeding is distinct from the grievance process. The directive plaintiff cited in the Complaint, #4040 (Compl. at 6), merely allows IGRC to dismiss grievances where the inmate has other specific procedures available, such as the inmate property claim process. While a disciplinary proceeding has different appellate procedure, cf. Giano II,

supra, 380 F.3d at 678 (DOCS regulations foreclose grievance where inmate has separate written appeal mechanism), the only grievance arguably on the assault claim is the Lost Property Grievance, with its references to the assault and seeking to have the officers disciplined. That Grievance was dismissed without a hearing (but cf. Docket No. 52, Pl. Memo. at 2) and without plaintiff's seeking review. The discussion of the assault in the Lost Property Grievance only refers to two defendants, Shuck and Dylag, without mentioning the other alleged assaulting officers Simmons and Diehl. Plaintiff, in fact, appealed the disciplinary proceeding.

VI. "Special Circumstances"

    A.    Standard

The Second Circuit created with the third part of its test a factual inquiry whether the circumstances "might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." Giano II, supra, 380 F.3d at 678. The Circuit Court held that a reasonable interpretation of grievance regulations or defendants' actions may constitute special circumstances, Hemphill, supra, 380 F.3d at 689; Giano II, supra, 380 F.3d at 678; see also Johnson, supra, 380 F.3d at 697 (confusing regulations basis for remand to see if inmate, in federal Bureau of Prisons custody, might have reasonably believed that he could raise his claim in the disciplinary proceeding), as well as an inmate's construction of the law relative to exhaustion which later decisions render erroneous, see Rodriguez, supra, 372 F.3d at 487. The case law since the Second Circuit decided Giano II and Hemphill has examined whether an inmate alleged the existence of special circumstances, see Leacock v. New York City Health & Hosp. Corp., No. 03 Civ. 5440, 2005 U.S. Dist. LEXIS 2991, at *21 (S.D.N.Y. Mar. 1, 2005) (finding no special circumstances alleged); Taylor v. New York State Dep't of Correctional

Servs., No. 03 Civ. 1929, 2004 U.S. Dist. LEXIS 25795, at *24 (S.D.N.Y. Dec. 22, 2004) (same); see also Berry, supra, 366 F.3d at 88 (absence of any justification for plaintiff's failure to exhaust), or whether such circumstances did or did not exist to preclude requiring adherence to the letter of the facility's grievance processes, see Freeman v. Goord, No. 02 Civ. 9033, 2004 U.S. Dist. LEXIS 23873, at *9-10 (S.D.N.Y. Nov. 23, 2004).  Where an inmate is familiar with the grievance process, then fails to use it without excuse, courts have dismissed claims that should have been grieved.  Dye v. Virts, 03CV6273, 2004 U.S. Dist. LEXIS 20583, at *17-21 (W.D.N.Y. Sept. 28, 2004) (Larimer, J.).  District courts have found the existence of "special circumstances" from DOCS employees failing to pick up appeals papers from the inmates to allow the inmates to perfect review of their grievance, Perkins v. Obey, No. 00 Civ. 1691, 2005 U.S. Dist. LEXIS 2774, at *12 (S.D.N.Y. Feb  23, 2005); see Martinez v. Augustine, No. 02CV579, 2004 U.S. Dist. LEXIS 17972, at *10 (W.D.N.Y. Sept. 2, 2004) (Schroeder, Mag. J.) (issue of fact whether prison employees impeded plaintiff in appealing grievance precluding summary judgment on exhaustion); Rivera v. Pataki, No. 04 Civ. 1286, 2005 U.S. Dist. LEXIS 2747 , at *41-42 (S.D.N.Y. Feb. 7, 2005) (prison officials told inmate plaintiff that nothing could be done at the facility level, held special circumstance)[1], or the inmate learned of the unconstitutional conduct after his time to file a grievance had run, see Borges v. Piatkowski, 337 F. Supp. 2d 424, 427 n.3 (W.D.N.Y. 2004) (Larimer, J.).  The inmate plaintiff has to allege

---

[1] See also Sheils v. Fulton County, ___ A.D.3d ___, 787 N.Y.S.2d 727, 730 (3d Dep't 2005), applying Giano II and holding that no special circumstances existed for not complying with grievance procedure on allegation of inmate not receiving updated rules and regulations, although inmate admitted that the rules were available to him.

that he or she has made reasonable attempts to exhaust his or her remedies. Veloz, supra, 339 F. Supp. 2d at 516.

B.   As Applied Here

Here, no "special circumstances" exist to excuse plaintiff from not exhausting his administrative remedies to grieve his claimed assault. On the plausibility of countering the exhaustion defense, see Hemphill, supra, 380 F.3d at 686; Page v. Breslin, No. 02CV6030, 2004 U.S. Dist. LEXIS 25056, at *14-15 (E.D.N.Y. Dec. 3, 2004), plaintiff was aware of the grievance process from his use of that process in thirteen other instances. Thus, it is not plausible that he believed that the Lost Property Grievance differed from the others he commenced that he could not appeal following the grievance hearing. Even if he perceived the hearing to be an inmate grievance hearing rather than a disciplinary hearing, he still could have attempted to seek review of the dismissal of the Lost Property Grievance, and, in fact, did seek review of the disciplinary proceeding. Plaintiff also could have commenced a separate grievance as to the assault itself, but chose not to do so. He now does not indicate that defendants or other DOCS personnel lead him to believe that he could not grieve the assault claim or to pursue dismissal of the Lost Property Grievance (with its factual reference to the assault). Thus, plaintiff could not plausibly seek to counter defendants' contention regarding exhaustion here.

Plaintiff does not indicate that he was hindered in any way in appealing adverse grievances or inaction on his grievances, see Johnson v. Hart, No. 99CV172, Docket No. 60, Decision and Order of Sept. 30, 2002, at 5 (W.D.N.Y.) (Arcara, Ch. J.); cf. Martinez, supra, 2004 U.S. Dist. LEXIS 17972, at *10, or at a minimum raise an issue of fact on this point save his belief that he did not have the right to make such an appeal. From the exhibits submitted with

16

the Complaint, plaintiff appears to be familiar with the appellate process within the inmate grievance system.

At best, plaintiff confused the disciplinary procedures with the grievance procedures; at worst, he never filed a grievance as to the assault but raised the issue in the disciplinary proceeding which he appealed and obliquely raised it again in an unrelated grievance that was not appealed. But the disciplinary proceeding focused only upon plaintiff's action and whether plaintiff deserved punishment and the amount thereof rather than the merits of his claim against the defendant correctional officers. This confusion (leading to his misinterpretation of grievance regulations to believe that a review was not available when one was) is not sufficient justification to be a "special circumstance" to depart from the requirement of exhausting the existing (and apparently familiar) grievance process. See Dye, supra, 2004 U.S. Dist. LEXIS 20583, at *20.

If this situation were found to be a "special circumstance," then inmates could rely upon their own confusion among two distinct procedures within the facility and make no attempt to exhaust their administrative remedies. This position would present issues of fact as to the credibility of the inmate as to his relative sophistication in the grievance and disciplinary arenas precluding summary disposition of PLRA exhaustion defenses. Here, plaintiff's prior use of the grievance proceedings indicates that he could not reasonably have been confused with the disciplinary proceeding to prevent him from exhausting his grievance procedures for the assault claim.

Thus, under the current state of this Circuit's law regarding PLRA exhaustion, plaintiff does not have a "special circumstance" to excuse his failure to exhaust his administrative

remedies on his assault claim prior to commencing this action.  Defendants' motion for summary judgment dismissing this last remaining claim should be **granted**.

## CONCLUSION

Based upon the above, it is recommended that defendants' amended motion (Docket No. 43) for summary judgment on the remaining assault claim be **granted**.  As a result of the Order (Docket No. 36) on the prior Report & Recommendation (Docket No. 32) dismissing the other claims, defendants' motion for summary judgment should be **granted** in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

                                                 s/HBS
                                           Hon. Hugh B. Scott
                                     United States Magistrate Judge

Dated: Buffalo, New York
       April 11, 2005